*E-Filed: February 14, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MERRITT SHERIDAN,<br><br>        Plaintiff,<br>   v.<br><br>FIA CARD SERVICES, N.A., ET AL.,<br><br>        Defendants. | No. C13-01179 HRL<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket No. 18]** |

Plaintiff Merritt Sheridan sues Defendant FIA Card Services, N.A. ("FIA") for failing to reasonably investigate her dispute in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681s-2(b). She also brings related state law claims for alleged violations of the California Consumer Credit Reporting Agencies Act (CCRAA), Cal. Civ. Code § 1785.25(a), as well as California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200. FIA moves for summary judgment on all claims. Both parties consented to having all matters proceed before the undersigned. Based on the moving and responding papers, as well as the arguments of counsel at the hearing on January 28, 2014, the Court grants the motion.

BACKGROUND

Sheridan had three credit card accounts with FIA, which she stopped paying after August or September of 2009. *See* Declaration of Dawn Vaughn, Dkt. 21, ("Vaughn Decl."). Sheridan included all three accounts in her bankruptcy petition, which she filed on December 29, 2009. On March 30, the accounts were discharged pursuant to the bankruptcy court's order.

On March 30 and 31, FIA updated its internal account records to reflect a zero balance on the accounts, which information was automatically transmitted to the credit reporting agencies (CRAs).[1]  *See* Declaration of Larry Parrott, Dkt. 20, ("Parrott Decl."). FIA asserts that each account is currently being reported as discharged in bankruptcy. *Id.* at ¶ 12.

In August 2011, Sheridan authorized National Credit Partners to obtain copies of her credit reports to help her dispute any inaccuracies. *See* Declaration of Merritt Sheridan, Dkt. 25, at ¶ 5 ("Sheridan Decl."). On August 26, she sent a letter to Experian disputing the accuracy of, among others, her three FIA accounts. Sheridan's letter stated that the FIA accounts were included in her bankruptcy and that none should be showing a "charge off" or any "lates." *See* Sheridan Decl., Ex. A. In response to her letter, Experian provided Sheridan with a "Reinvestigation Report" dated September 14, 2011. *See* Sheridan Decl., Ex. B. Sheridan asserts that the Reinvestigation Report shows that FIA corrected its reporting by removing the charge off notations. *See* Sheridan Decl. at ¶ 6. However, the report still indicated that FIA was reporting delinquent payments during the months Sheridan's bankruptcy was pending, while simultaneously reporting a zero balance. *See* Sheridan Decl., Ex. B. In March 2012, Sheridan was denied two credit cards due to serious delinquencies on her Experian credit report. *See* Sheridan Decl. at ¶ 7.

In her First Amended Complaint (FAC), Sheridan alleges that the information FIA furnished after receiving notice of Sheridan's dispute continued to be inaccurate or incomplete in three respects: (1) FIA reported overdue payments while Sheridan's bankruptcy was pending; (2) FIA simultaneously reported overdue payments and a zero balance; and (3) FIA failed to report that Sheridan disputed the information. *See* FAC, Dkt. 15.

FIA moves for summary judgment on the grounds that it never received notice of Sheridan's dispute from a CRA, and in any case, it did not furnish inaccurate information.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson*

---

[1] FIA reports to four CRAs: Experian, Equifax, Transunion and Innovis. *See* Parrot Decl., at ¶ 3. However, because Sheridan only puts the first three at issue, this Order uses the term CRAs to refer only to Experian, Equifax, and Transunion.

2

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

## DISCUSSION

### A. Evidentiary Challenges

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). In her opposition, Sheridan objects to FIA's introduction of the declarations of Margaret Jane Getty and Dawn Vaughn because FIA failed to name them as potential witnesses in its initial disclosures pursuant to Rule 26(a). *See* Sheridan's Opposition to FIA's Motion for Summary

1 Judgment, Dkt. 23, at 9 ("Opposition"). In fact, FIA did not provide any specifically named
2 individuals, only the general descriptions "custodian of records" and "employee or representative
3 with knowledge of Defendant's credit reporting procedures." Reply in Support of Motion for
4 Summary Judgment, Dkt. 28, at 4 ("Reply"). FIA responds that the declarations should be admitted
5 because FIA's initial disclosures complied with the Rules in that they were reasonable at the time in
6 view of the very broad allegations of Sheridan's complaint. *Id.* at 5. FIA further points out that
7 Sheridan never served any written discovery in this case. *Id* at 6. Sheridan concedes that she did
8 not propound any discovery in this case, explaining that she instead relied on the deposition of FIA
9 employee Larry Parrott from another case, which the parties stipulated would be admissible here.
10 Regardless of whether FIA's initial disclosures were sufficiently specific, the Court will not exclude
11 such relevant evidence where Sheridan made no attempt whatsoever to obtain the material or any
12 other discovery from FIA, particularly in view of the fact that the declarations provide only basic
13 account information that would have been produced in response to even the most perfunctory of
14 discovery requests. Accordingly, Sheridan's objections to the Getty and Vaughn Declarations are
15 denied.[2]

16 FIA replies to Sheridan's opposition with its own evidentiary objections. FIA asserts that all
17 the credit reports attached to Sheridan's declaration should be stricken because they were not
18 produced in discovery despite FIA's specific discovery requests for such reports. Sheridan excuses
19 her failure to produce the credit reports by generally asserting that none of them were in her
20 possession when she responded to FIA's requests for production in August 2013. Nonetheless, FIA
21 contends that the documents should be excluded because Sheridan failed to timely supplement in
22 violation of Rule 26(e).

23 As for the Experian Reinvestigation Report and the August 2010 Experian credit report,
24 Exhibits B and C respectively, Sheridan asserts that she lost these documents when she moved to a
25 new residence in March 2012, that she specifically requested copies of these documents from

---

[2] Sheridan later raised these objections anew in a separate motion in limine. *See* Dkt. 30. FIA correctly points out that this separate motion violates Civil L.R. 7-3(a), which provides that any "evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Accordingly, the motion in limine is not only denied on the merits for the reasons described above, but also because it is procedurally improper.

4

Experian in July 2013 (well before the October fact discovery cutoff), and that Experian did not send them to her until December 2013. *See* Sheridan Decl. at ¶ 6. The Court finds that Sheridan did not violate her duty to supplement by producing these two documents along with her Opposition on January 2, 2014, and therefore they will not be stricken.

Sheridan also purports to attach to her declaration credit reports she received in February, October, and December 2013, as Exhibits D, E, and F, respectively. The February 2013 credit report is not actually attached, but if it were, it would be excluded. Sheridan's declaration provides, "On February 1, 2013 I received a tri-merged credit report with information from Experian, Equifax, and Transunion." Sheridan Decl. at ¶ 8. Twelve days later, Sheridan filed the instant lawsuit, which is primarily concerned with the contents of her credit report, yet inexplicably, she never produced this or any other credit report in discovery. Then, shortly after fact discovery closed in mid-October, "[o]n October 29, 2013 [Sheridan] visited credit report.com [and] obtained a tri merged credit report." *Id.* at ¶9. Sheridan provides no justification for waiting over two months to produce this credit report in violation of her duty to supplement her responses to requests for production. Accordingly, it too is excluded. Finally, on December 26, 2013, Sheridan received yet another credit report, which she did produce within a reasonable time after she gained possession of it. However, parties are not only required to produce items they possess, but those within their control as well. *See* Fed. R. Civ. P. 34(a)(1). "Control is defined as the legal right to obtain documents on demand." *U.S. v. Internat'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). Because Sheridan had the legal right to obtain her credit reports on demand, they were within her control, and she had a duty to timely produce them in response to FIA's requests for production. Her failure to do so renders them inadmissible. Accordingly, Sheridan's February, October, and December credit reports are excluded. Significantly, Sheridan still has the pre-dispute August 2010 credit report and the post-dispute Reinvestigation Report on which to base her claims.

B. Fair Credit Reporting Act

The FCRA imposes certain obligations on persons who furnish information to CRAs. *See* 15 U.S.C. § 1681s-2. Subsection (a) imposes a duty to provide accurate information; however, there is

no private right of action for § 1681s-2(a). There is a private right of action based on subsection (b), which imposes a series of duties once a furnisher receives notice directly from a CRA that a consumer disputes the accuracy of the furnisher's reporting. *See* § 1682s-2(b). Upon notification, a furnisher must, among other things, conduct a reasonable investigation and update any information it finds to be inaccurate or incomplete. *Id.*; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). Information can be inaccurate or incomplete if it is "patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012). Furnishers must also report bona fide disputes; however, there is no obligation to "report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading." *Gorman*, 690 F.3d at 1163.

    1.   Whether FIA Received Notice of the Dispute from a CRA

FIA asserts that it is entitled to summary judgment because no CRA ever notified FIA of Sheridan's dispute. When a CRA transmits to FIA a notice of dispute regarding an FIA account, FIA receives an Automated Consumer Dispute Verification ("ACDV"), which FIA then documents in its records for the disputed account. *See* Declaration of Margaret Jane Getty, Dkt. 19, at ¶ 2 ("Getty Decl."). FIA's records for Sheridan's accounts indicate that it never received an ACDV from any CRA. *Id.*

Sheridan did send a letter to Experian disputing the accuracy of information on FIA accounts, and by law, Experian was to notify FIA of the dispute within five days. *See* § 1681i(a)(2). However, where a furnisher has produced evidence that it was not notified by the CRA of the consumer's dispute, the CRA's statutory obligation to provide notice is alone insufficient to raise a genuine dispute at the summary judgment stage. *See Himmelstein v. Comcast of the Dist., L.L.C.*, 931 F. Supp. 2d 48, 55 (D.D.C. 2013) ("At summary judgment . . . Plaintiff must prove that such notice actually occurred."); *Davis v. Md. Bank*, No. 00–04191, 2002 WL 32713429, at *16 (N.D. Cal. June 19, 2002) (noting that CRA's statutory obligation to inform furnisher of consumer complaint is insufficient to trigger presumption of notice at the summary-judgment stage).

Sheridan argues that corrections made to her credit report between her sending the dispute letter and receiving Experian's Reinvestigation Report indicate that FIA received notice of the dispute and made the corrections in response thereto.  Specifically, her dispute letter states that two of the accounts should not be reporting as charge offs, and the resulting Reinvestigation Report does not show any charge off notations.  Thus, it is reasonable to infer that FIA removed them after receiving notice of the dispute.  Sheridan contends that this is comparable to *Lowe v. Surpas Res. Corp.*, where a Kansas District Court found it reasonable to infer that the furnisher had been notified where the plaintiff had sent dispute letters to four CRAs, and the CRAs responded that after conducting their investigations, the disputed debts had been deleted from her credit report.  *Lowe v. Surpas Res. Corp.*, 253 F. Supp. 2d 1209, 1254.  There, despite the furnisher's assertions that it had not been notified, the Court held that the plaintiff had demonstrated a genuine dispute of material fact as to notice.  *Id.*

Here, however, Sheridan's evidence does not support her assertion that FIA made reporting changes in response to receiving notice of her dispute.  The only pre-dispute credit report produced by Sheridan is the Experian credit report from August 2010.  *See* Sheridan Decl., Ex. C.  Contrary to Sheridan's assertions, that report contains no charge off notations and clearly indicates that each account was discharged through bankruptcy in March 2010.  Likewise, the Reinvestigation Report contains no charge off notations and clearly indicates that each account was discharged through bankruptcy in March 2010.  Moreover, the beginning of the Reinvestigation Report purports to list each account that was updated as a result of the reinvestigation, and where the more detailed account information appears, each updated account bears a notation indicating specifically what item of information was updated.  Significantly, none of the FIA accounts appear in the list of updated accounts, and none of the FIA account details indicate that an item of information was updated.  Rather than showing that FIA corrected its reporting in response to receiving notice of the dispute, Sheridan's evidence confirms that no changes were made.  Consequently, there is no evidence that FIA ever received notice of the dispute from a CRA, and Sheridan has failed to demonstrate the existence of a genuine dispute of material fact.

2. Whether FIA Furnished Incomplete or Inaccurate Information to CRAs

According to the Reinvestigation Report, FIA reported to Experian that one of Sheridan's FIA accounts was past due as of November 2009, and the other two were past due as of December 2009. *See* Sheridan Decl., Ex. B. FIA continued reporting that the accounts were passed due in January and February, while Sheridan's bankruptcy was pending. *Id.* During the same months, FIA reported a zero balance. *Id.* Finally, the Report notes that all three accounts were discharged through bankruptcy in March 2010. *Id.* FIA does not deny it that continued to report overdue payments during January and February or that it also reported a zero balance, rather FIA argues that as a matter of law, it is not inaccurate or materially misleading to do so. Sheridan asserts that reporting overdue payments while her bankruptcy was pending is inaccurate or misleading because the discharge order removed her legal obligation to pay, the reporting suggests that FIA still had the ability the collect the debt, and it violates industry standards, which mandate a "no data" notation during bankruptcy. Finally, she argues that reporting overdue payments while simultaneously reporting a zero balance is inaccurate or misleading in itself.

Sheridan's arguments are not novel and have all been recently rejected by Courts in this district. *See Mortimer v. Bank of America, N.A.*, No. C-12-01959 JCS, 2013 WL 150142 (N.D. Cal. April 10, 2013); *Giovanni v. Bank of Am., N.A.*, No. C 12-02530 LB, 2013 WL 1663335 (N.D. Cal. April 17, 2013). In *Mortimer*, the court held that it was not inaccurate to report overdue payments during a pending bankruptcy because "[r]egardless of whether the debt owed . . . was subsequently retroactively discharged, the historical fact remains that Plaintiff's account was delinquent in those months." *Mortimer*, 2013 WL 150142, at *11. Similarly here, it is undisputed that Sheridan had not made any payments for several months before filing for bankruptcy, and that did she did not make any payments while her bankruptcy was pending in January or February 2010. Thus, it was factually accurate for FIA to report that her accounts were past due during those months, and such reporting of historically accurate information does not later become inaccurate under the FCRA when the debts are subsequently discharged through bankruptcy.

The *Mortimer* court also rejected the argument that failure to comply with industry standards violates the FCRA where the information itself is nonetheless true. *Id.* at *12 ("To the extent that

8

the account was delinquent during the pendency of the bankruptcy, failure to comply with the CDIA guidelines does not render the report incorrect."). Sheridan attempts to distinguish the instant case from *Mortimer* because there the plaintiff failed to plead any facts suggesting that such reporting was misleading, whereas here, potential lenders Macy's and Credit Care were misled by FIA's inconsistent reporting. Sheridan's declaration provides that she was denied credit cards because of the "serious delinquencies" on her Experian credit report. However, this does not suggest that potential lenders were misled because the reporting was inconsistent with industry guidelines as much as it suggests that they were deterred by a factually accurate depiction of Sheridan's credit history. Accordingly, this Court does not think that such reporting is materially misleading, notwithstanding any noncompliance with industry guidelines.

Finally, Sheridan argues that it is inaccurate or misleading to report delinquent payments and a zero balance in the same months. The Court has already found that it was not inaccurate to report delinquent payments during bankruptcy, and Sheridan does not argue that the retroactive reporting of a zero balance upon bankruptcy discharge is inaccurate. Accordingly, neither item of information is "patently incorrect" or "inaccurate on its face." *See Drew*, 690 F.3d at 1108. Furthermore, the Court does not find that FIA's reporting delinquent payments and a zero balance is materially misleading because any perceived inconsistency is unlikely to adversely affect credit decisions, particularly where the report also clearly notes that the account was discharged in bankruptcy. *See Giovanni*, 2013 WL 1663335, at *6-7 (finding that simultaneously reporting overdue payment notations and a zero past due balance is not patently incorrect or materially misleading).

Sheridan has not established that FIA reported any inaccurate or materially misleading information. Moreover, Sheridan has not demonstrated the existence of a bona fide dispute such that FIA's failure to report that the information was disputed constitutes incomplete reporting pursuant to the FCRA. Accordingly, the Court finds that Sheridan has failed to show the existence of a genuine dispute of a material fact, and FIA is entitled to summary judgment on the FCRA claim.

9

C. Consumer Credit Reporting Agencies Act

The CCRAA provides that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civil Code § 1785.25(a). In determining whether an item of credit is inaccurate, the same test is applied under the FCRA and the CCRAA. *See Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010) ("Accordingly, in considering whether [plaintiff]'s credit report was inaccurate within the meaning of the CCRAA, we are guided by *Gorman*'s 'patently incorrect or materially misleading' standard."). As discussed above, the Court finds that Sheridan has not raised a genuine dispute as to whether FIA's reporting was inaccurate. Accordingly, FIA is entitled to summary judgment on this claim as well.

D. Unfair Competition Law

The sole basis for Sheridan's UCL claim, as alleged in the FAC, is FIA's violation of the CCRAA. However, because the Court finds that FIA is entitled to summary judgment on the CCRAA claim, FIA is likewise entitled to summary judgment on the UCL claim.

CONCLUSION

Based on the foregoing, defendant's summary judgment motion is granted as to all claims for relief. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: February 14, 2014

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C13-01179 HRL** Notice will be electronically mailed to:

Elliot Wayne Gale     egale@sagarialaw.com, Glenox@sagarialaw.com, Josborne@sagarialaw.com

Jarrett Stanton Osborne-Revis     Josborne@sagarialaw.com

Raagini Rashmi Shah     rshah@reedsmith.com, ckoster@reedsmith.com

Scott Joseph Sagaria     sjsagaria@sagarialaw.com, mmccrory@sagarialaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**